Loeb, Appellant, *v.* Watkins.

Argued November 24, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused April 9, 1968.

*Nochem S. Winnet,* with him *Edward Gerald Donnelly, Jr., Charles M. Solomon,* and *Fox, Rothschild, O'Brien & Frankel,* for appellants.

· *Ragan A. Henry*, with him *James M. Carter*, and *Goodis, Greenfield, Narin & Mann*, for appellees.

OPINION BY MR. JUSTICE MUSMANNO, March 15, 1968:

The problem in this case is simply one of reading the English language, and importing meaning, plus enforceability, to its simple and plain words.

On March 18, 1922, a six-block tract of land in Philadelphia was divided by court decree into 31 parcels, numbered 1 to 31 inclusive. The owners entered into a restrictive agreement, duly recorded in the office of the recorder of deeds, which said, inter alia: ". . . there shall not at any time hereafter be erected or built on any of the thirty-one (31) lots or pieces of ground as shown by the said plan more than two (2) detached private dwelling houses. . ."

Jerome Balka, owner of one-third of Lot No. 27 erected on it, the land belonging to him, a private dwelling. The defendants in this case, Thomas H. Watkins, Louise Watkins, Artis T. Ray, Jr., and Vivian D. Ray, owners of another one-third of Lot 27, made it known that they were about to construct on their land two additional houses. The plaintiffs in this case, William S. Loeb, Nancy A. Loeb, Jerome Blum, Marilyn K. Blum, Aloysius F. Kurtz, and Marie J. Kurtz, adjoining landowners, who had taken title to their land with the same building restriction sought to be imposed on the defendants, notified, through their attorneys, the defendants that only one house could be erected on their land. The defendants did no building for three years and then resumed their project of erecting two additional homes on Lot 27. The plaintiffs, again through their attorneys, notified the defendants that such action would violate the restriction contained in their deeds.

When the defendants ignored this notice and proceeded to advance their building project, the plaintiffs filed a complaint in equity to enjoin construction of more than one house on Lot 27. The Court of Common Pleas of Philadelphia County, after hearing, dismissed the complaint and the plaintiffs appealed.

The lower court held that the restriction propounded by the defendants expired 25 years after its original promulgation, namely, in 1947. The court came to this conclusion because of a statement in the original restrictive agreement that the owners agreed, each with the other "that there shall not be for the period of twenty-five years from the date hereof erected or built upon any part of the hereinbefore described lots of ground any buildings or buildings improvement or improvements designed for use or to be used for other than strictly private or residential purposes without abridging or restricting in any way the general language used it is understood that the words strictly private residential purposes shall not include hotel apartment house or flat purposes nor shall any building hereafter to be erected thereon during said restricted period of twenty-five years be converted from strictly residential to other purposes or uses. . .".

This part of the restrictive covenant obviously describes the type of construction permitted on the land and specifically excludes hotel apartment houses and flats. However, immediately following the 25-year proviso, there appears this plate-glass-clear language: "ALSO that there shall not at any time hereafter be erected or built on any of the thirty-one lots of pieces of ground as shown by the said plan more than two detached private dwelling houses. . ."

Attention is specifically directed to the capital letters ALSO. The parties emphasized by the use of ALSO that the two-dwelling house interdiction was *in addi-*

*tion.* to the 25-year no hotel or flat provision. Thus, the 25-year limitation can by no interpretation of language be considered a modification of the binding restriction that "there shall not *at any time* hereafter" (emphasis supplied) be erected more than two detached private dwelling houses on one lot. *At any time hereafter* certainly denotes a time beyond 25 years. *At any time hereafter* is ominous in its infinity but this is what the owners, one with the other, agreed to. They undoubtedly desired to enjoy plenty of space about their respective dwellings, and wished to exclude any beehive appearance to their community of houses. It is not for the courts to interfere with this freedom of landowners to use their land as they wish.

The learned chancellor erred in reducing infinity to 25 years. He erred further in his conclusion that equitable relief should be denied the plaintiffs because they did not show that upholding of the restriction would result in any substantial benefit to them. Who is to say that it will not result in damage to them if the antecedents in title believed a greater enjoyment would be theirs if the tract of land was restricted to 62 private dwellings? Who should say they did not have the right to limit the building operations to that extent? If a covenant running with land proclaims that a lake ornamenting the land must never be destroyed, no successor in title would have the right to argue that the lake is not pretty, the water muddy and no good for fishing, and, therefore, should be drained. Where a man's land is concerned, he may impose, in so far as the imposition does not violate any law or public policy, any restriction he pleases.

Restrictive covenants are enforcible without the necessity of showing that the enforcement would work a substantial gain to the legal beneficiary of the covenant. The plaintiffs' rights here to enforce the restric-

tive covenant is absolute, regardless of proof that they do or do not suffer damage as a result of the breach of the covenant. What was said recently in the case of *Peters v. Davis,* 426 Pa. 231, is pertinent here: "If a property owner, deliberately and intentionally violates a valid express restriction running with the land or intentionally 'takes a chance', the appropriate remedy is a mandatory injunction to eradicate the violation. See Ventresca v. Ventresca, supra, pp. 252, 253; Moyerman v. Glanzberg, supra, p. 393. Where one deliberately violates a building line restriction, injunctive relief requiring a modification of the building to comply with the restriction should not be denied on the theory that the loss caused by it will be disproportionate to the good accomplished. See: 20 Am. Jur. 2d §§328, 329, 330, pp. 896-899, inc."

The defendants complain that they did not have notice of the restriction in controversy. As already stated, the agreement was recorded in the office of Recorder of Deeds, now the Department of Records. Then, the defendants contend, that the recorded instrument does not describe the lots by metes and bounds, but merely refers to a plan not recorded, making it impossible for them to determine to what lots the restriction applied. This contention carries little conviction. The instrument containing the restriction was placed of record and this was sufficient to indicate and provide notices of the properties covered thereby. This is clearly borne out by the fact that the Commonwealth Land Title Insurance Company, the very company which handled the title search and title insurance for the defendants' property had issued title insurance for all the other conveyances of this tract of land since November 16, 1950, and the very first insurance policy issued by it made reference to the restrictions as so recorded.

Nor is there any merit to the hypothesis of the possibility that the one-third of Lot 27 conveyed to Jerome Balka upon which he built a home is not the same lot 27 referred to in the restrictive covenant. There is nothing in the record to suppose such a supposition.

Decree reversed; appellees to bear costs.

CONCURRING OPINION BY MR. JUSTICE O'BRIEN:

I concur in the result reached by the majority, but disagree with the view that equity should grant relief even in the absence of any substantial benefit to plaintiffs.

However, I disagree with the dissent's view that no substantial benefit has been shown. The dissent takes the approach that since commercial and apartment uses are now possible, the covenant limiting a lot to two dwelling houses is useless. Such is not the case. While cases are legion holding that a change of neighborhood will preclude enforcement of a covenant, I can find no case that deprives a landowner of his contractual right because of the mere *possibility* of a change of neighborhood. On the contrary, there is authority to the effect that even a continuing pattern of change of neighborhood does not preclude relief where some part of the residential neighborhood still remains. *Hunter v. Wood,* 277 Pa. 150, 120 A. 781 (1923). The language of the Court, at page 153, applies with renewed force here: "Although the character of the neighborhood is changing, there are other private residences fronting on the same street and adjoining the residence of plaintiff and, aside from the business carried on in the immediate vicinity, the community is still a residential one, consequently that locality has not reached the point when the enforcement of the covenant for the benefit of the adjoining property owner can be said to be a useless act." Ours is even a stronger case than *Hunter.*

In that case there was some change of neighborhood; in the instant case it is clear that the neighborhood is entirely residential, with no more than two private detached dwelling houses per lot. The mere possibility of change does not render enforcement of the covenant useless.

Mr. Justice ROBERTS joins in this concurring opinion.

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority opinion prostitutes equity jurisdiction. As a general rule, equity will not enforce a restrictive covenant which is of no benefit to the dominant tenement or is an absurd, futile, and ineffective attempt to achieve a desired end. *Daniels v. Notor*, 389 Pa. 510, 515, 133 A. 2d 520 (1957); *Kelly v. Philadelphia*, 382 Pa. 459, 115 A. 2d 238 (1955); *Katzman v. Anderson*, 359 Pa. 280, 59 A. 2d 85 (1948); *Price v. Anderson*, 358 Pa. 209, 56 A. 2d 215 (1948); *Henry v. Eves*, 306 Pa. 250, 159 Atl. 857 (1932). Furthermore, equity will deny relief to a party seeking enforcement of a restrictive covenant "if the harm done by granting the injunction will be disproportionate to the benefit secured thereby." Restatement, Property, §563 (1944). It is important to note that these equitable principles evolved from the legal maxim that restrictions on the use of land are not favored by the law because they constitute an interference with the free use and alienability of real property: *Ratkovich v. Randell Homes, Inc.*, 403 Pa. 63, 169 A. 2d 65 (1961); *Siciliano v. Misler*, 399 Pa. 406, 160 A. 2d 422 (1960); *Food Fair Stores, Inc. v. Kline*, 396 Pa. 397, 152 A. 2d 661 (1959); *McCandless v. Burns*, 377 Pa. 18, 104 A. 2d 123 (1954).

Here the enforcement of the restrictive covenant would result in no benefit, economic or otherwise, to the parties seeking its enforcement. It would be an

anachronism to interpose equitable relief in support of a restriction which on the one hand prohibits more than two detached dwelling houses, while at the same time permits every other conceivable use of the property. (The apparent interpretation of the restrictive covenant now permits the property to be utilized for apartment complexes and/or commercial or industrial purposes.)

Assuming arguendo that such an absurd result actually was intended by the contracting parties, equity, nevertheless, should not support the enforcement of a covenant which, now, due to the expiration of the other use restrictions, makes little, if any, sense, involves no benefit to the property owner seeking its enforcement, and only serves to seriously hamper a reasonable use of the property. When the twenty-five year period expired eliminating the other use restrictions, the usefulness and benefit of the proviso prohibiting more than two detached private dwellings likewise expired. The fact that a technical violation of the agreement may be committed is not sufficient under this covenant to warrant a court of equity to enjoin such violation.

Moreover, the majority's sole reliance upon *Peters v. Davis*, 426 Pa. 231, 231 A. 2d 748 (1967), for the proposition that restrictive covenants are enforceable without a showing of benefit to the property owner is utterly without justification. There we were concerned with a violation of building line restrictions in a deed, the violation of which encroached upon the property owner's easement for light, view and air. In contradistinction to the instant case, the enforcement of the building line restrictions in *Peters* obviously entailed some benefits to the party seeking enforcement and involved no change in circumstances or conditions which rendered enforcement absurd or futile. Since the law does not favor restrictions in the use of land, and since

the restriction here is irrational and devoid of any practical benefit to anyone, I am compelled to conclude that equity should not sanction its enforcement.

I dissent.

Mr. Justice JONES and Mr. Justice EAGEN join in this dissenting opinion.