Betty R. MARSHALL, Appellant,

v.

C. D. ADAMS et al., Appellees.

Court of Appeals of Kentucky.

Sept. 26, 1969.

Strother Kiser, Lexington, Julius Rather, Lexington, for appellant.

Gladney Harville, Stoll, Keenon & Park, Lexington, for appellees.

JULIUS LEIBSON, Special Commissioner.

This suit was brought by the appellees, each of whom is the owner of an interest in property in the Mt. Vernon Subdivision in Lexington, to enjoin the appellant, who is the owner of Lot 1, Block G., in the subdivision, from violating a deed restriction by the construction and maintenance of a house having exterior walls of aluminum siding. The chancellor determined that the construction and maintenance of the house with a portion of the exterior walls consisting of aluminum siding did violate the restriction.

■ The lot involved was subject to the following restriction prior to its conveyance to defendant (appellant) Marshall:

"Said premises shall be used only for residential purposes and the construction of one single family residence thereon, THE EXTERIOR OF WHICH SHALL BE OF MASONRY CONSTRUCTION and a garage or carport, which, if attached to the residence SHALL ALSO BE OF MASONRY CONSTRUCTION." (our emphasis)

It seems clear to us from a simple reading of the restriction above quoted that "the exterior of which shall be of MASONRY CONSTRUCTION" means exactly what it says and that it cannot be stretched to mean "aluminum construction" or some other entirely different kind of construction. Webster's New Word Dictionary defines "masonry" as "something built by a mason or masons, of stone, brick; brickwork or stonework." This is likewise the commonly understood meaning.

Appellant contends the trial court erred in granting a summary judgment in favor of appellees, and in not granting a summary judgment in favor of appellant.

The answer of appellant admits that the foregoing restriction was placed upon all lots in the subdivision for the joint and mutual benefit of all property owners therein to enhance and maintain the quality and value of the homes of all persons in the subdivision. It is conceded by appellant that some portions of the exterior walls were constructed, not of masonry, but of aluminum siding, but it is argued, first, that there was no damage to appellees; secondly, that oral evidence of the subdivider should be considered in determining the meaning and intent of the restriction, and that the affidavit of the subdivider conclusively establishes that the use of aluminum siding did not violate the restriction; thirdly, that appellees are guilty of laches and should be barred from enforcing compliance with the restriction.

■ We disagree with appellant's contention that it is necessary for the appellant to have been damaged. The applicable rule, stated in 43 CJS, Injunctions, Section 87(4)(c) is:

(c) Amount of Damage as Material. It is a well defined exception to a general rule stated supra § 22 that, where one who has entered into a restrictive covenant as to the use of land commits a distinct breach thereof, he may be enjoined irrespective of the amount of damage caused by his breach, and even if there appears to be no particular damage. A court of equity fastens on the real contract and compels the execution of the very thing covenanted to be done. It is not necessary to prove that the injury will be irreparable.

It has even been held that the right to an injunction will in no way be affected by the fact that the act complained of or the removal of the restriction would be beneficial to complainant's property or enhance its value or the value of other properties in the restricted area; but it has also been held that, where the purpose of the restriction has been frustrated and the result of enforcing it is to depreciate rather than to enhance the value of the property concerned, a court of equity should not interfere.

The same general rule is stated in 14 Am. Jur., 666, Covenants, Conditions and Restrictions, Section 339, as follows:

"A restrictive covenant or agreement may be enforced without showing substantial damages to the complainant by reason of the violation thereof. *The right to enjoin the breach of restrictive convenants does not depend upon whether the covenantee will be damaged by the breach; the mere breach is sufficient ground for interference by injunction. The fact that a negative stipulation is involved has been emphasized in injunction cases denying that damage need be shown."* (emphasis added).

In Hartman v. Wells, 257 Ill. 167, 100 N.E. 500, Ann.Cas.1914A, 901, a building-line restriction was shown to have been violated, and in holding that it was not necessary for the plaintiff to prove he had been damaged by the violation to obtain an injunction the court said in part:

"The evidence as to whether appellant's property was damaged by the violation of the agreement was conflicting, *but we do not think that was a material question.* In (citation omitted) the court, in discussing the enforcement of negative covenants in courts of equity, said it was well settled that equity would entertain bills for injunctions to prevent their breach although the breach would cause no substantial injury or although the damages might be recoverable in an action at law. *'This is upon the principle*

*that the owner of land selling or leasing it may insert in his deed or contract just such conditions or covenants as he pleases touching the mode of enjoyment and use of the land.'* As said in Steward v. Winters, 4 Sandf.Ch. (N.Y.) 587: 'He is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. *He has a right to define the injury for himself, and the party contracting with him must abide by the definition.'* " (emphasis added)

In the later case of Van Sant v. Rose, 260 Ill. 401, 103 N.E. 194, 49 L.R.A.,N.S., 186, one of the defenses was that the plaintiff owned no other land in the vicinity, he could not be damaged by the violation and hence no injunction should issue. In rejecting this argument, the court said in part:

"This court has held, in harmony with the prevailing rule in other jurisdictions, *that the right to enjoin the breach of restrictive covenants does not depend upon whether the covenantee will be damaged by the breach; but the mere breach is sufficient ground for interference by injunction.*

"* * * *Bispham, in the paragraph above referred to, says it is no answer to an action of this kind to say the breach will inflict no injury upon the complainant, or even that it will be a positive benefit.* * * * 'If there is a negative covenant, * * * the court has no discretion to exercise. *If parties for valuable consideration, with their eyes open, contract that a particular thing shall not be done, all that a court of equity has to do is to say, by way of injunction, that the thing shall not be done. In such a case the injunction does nothing more than give a sanction of the process of the court to that which already is the contract between the parties. It is not, then, a question of the balance of convenience or inconvenience or of the amount of damage or injury: it is the specific performance by the court*

of that negative bargain which the parties have made, with their eyes open, between themselves.' Pomeroy, in his work on Equity Jurisprudence, § 1341, (3rd Ed.) [Vol. 4] says: 'The amount of damages, and even the fact that plaintiff has sustained any pecuniary damages, are wholly immaterial.' " (emphasis added)

To the same effect is Schlitz Brew. Co. v. Nielzeen, 77 Neb. 868, 110 N.W. 746, 8 L.R.A.,N.S., 494.

■ Appellant next contends that the affidavit of the subdivider as to the intended meaning of the restriction conclusively established that the aluminum exterior walls did not violate the restriction. We disagree.

The affidavit of the subdivider stated, * * * "that if said restriction is construed in accordance with its intent, it would read as if the words 'as good as masonry construction' were used instead of just 'masonry construction.' "

In La Vielle v. Seay, Ky., 412 S.W.2d 587, this court said:

"We have recently had occasion to reconsider and restate the law in this jurisdiction concerning the construction and enforceability of restrictive covenants in deeds. In Mascolino v. Noland & Cowden Enterprises, Inc., Ky., 391 S.W.2d 710, we pointed out that in construing and enforcing restrictions on real property the court must seek the intention of the grantor or creator of the restrictions *from the language used,* considered in the light of such factors as the general scheme of the subdivision, *and that as a matter of judicial construction the court may not substitute what the grantor may have intended to say for the plain import of what he said.*" (emphasis added)

To the same effect see McMahan v. Hunsinger, Ky., 375 S.W.2d 820, 822.

Inasmuch as the language in the restrictive covenant is clear and unambiguous, the affidavit of the subdivider was incompetent and irrelevant. It also might be noted that the affidavit of Mr. Arnold, the subdivider, is substantially different from his own thoughts expressed in his letter of July 9, 1962.

■ Appellant next contends that appellees' action is barred by laches, waiver or estoppel. We find no merit in this contention. The record shows uncontradictedly that before any siding was ever placed on the exterior of the wall in question, appellant's neighbors were discussing and questioning how appellant "was going to put brick on that particular portion of the house," and that objections were made prior to any substance or material being placed thereon; and shortly after the wood siding was put on (which was put on before the aluminum siding) the neighbors got up a petition in protest and employed an attorney who called appellant and registered a protest about the wood siding; and the protests continued unabated over the aluminum sidings. It is difficult to imagine what more appellees could have done in the way of objecting and protesting to appellant, or at what more timely periods.

We feel the admitted facts relative to the unabated and continual objections to the violation of the restrictive agreement in the within case to be much stronger than those in the case of Ashland Lumber Co. v. Williams, Ky., 411 S.W.2d 909; nevertheless we believe that case to be applicable. There the lumber company received an opinion of the city manager and city attorney that it would be legally permissible for it to erect a new nonconforming building and the building was ninety percent complete when the first protests were registered. Despite these protests at that late date the building was completed. This court ordered the building removed and as to laches or waiver we said:

"Considering the facts that concerted effort by a group of property owners naturally is slow in getting organized,

and that a few years previously the appellants had been permitted by court order to build an open roof over part of their lot and it may not have been apparent in the early stages of the instant construction that a complete building was going up, we cannot conclude that the comparatively short period that elapsed here was such as to give rise to an estoppel. Furthermore, the good faith of the appellants is not so clearly shown as to require the conclusion that their proceeding with the construction of the building was in reliance rather than in gamble, upon absence of protest.

"The appellants will suffer a substantial loss. However, we cannot escape the belief that they took a deliberate gamble, hoping to get away with the erection of a building which now they do not even suggest was permissible under the zoning regulations."

There is no merit in appellant's contention that appellees' action is barred by laches, estoppel or waiver.

The involved restriction was clear, reasonable and valid. It was violated. The case was properly adjudicated on motion for summary judgment, there being no genuine issue of fact.

The judgment is affirmed.

All concur except REED, J., who did not sit.