559 A.2d 925

James V. GRASSO and Judith A. Grasso, Husband and Wife; George P. Hammer and Linda A. Hammer, Husband and Wife; Lawrence G. Hofmann, Jr. and Rolanda A. Hofmann, Husband and Wife; and Gordon C. Newell and Marion Jo Newell, Husband and Wife

v.

Theodore W. THIMONS, Jr. and Eileen R. Thimons, Husband and Wife, Appellants,

v.

Raymond H. SMITH, Jr. and Mary Jo Smith, Husband and Wife.

Superior Court of Pennsylvania.

Argued Oct. 27, 1988.

Filed April 17, 1989.

Reargument Denied June 26, 1989.

594

Howard M. Louik, Pittsburgh, for appellants.

James R. Kyper and Daniel S. Cohen, Pittsburgh, for Grasso, appellees.

Before OLSZEWSKI, DEL SOLE and KELLY, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order granting appellees' motion for summary judgment and denying appellants' cross-motion for summary judgment. Appellants raise the following issues for our review: (1) whether the trial court erred in finding that the restrictive covenant prohibits appellants from using their property as both a residence and professional office; (2) whether the trial court was required to consider extrinsic evidence of the declarant's intent in construing the phrase "residential uses" in the restrictive covenant; (3) whether appellees, neighboring property owners, are entitled to summary judgment in the absence of any proof of damages or substantial benefit in enforcement of the restrictive covenant; (4) whether appellees are precluded from obtaining summary judgment on the basis of equitable estoppel; and (5) whether the trial court's order, not entered in accordance with Pa.R.C.P. No. 1517(a), invalidates the entry of the order granting summary judgment in favor of appellees. For the reasons below, we affirm.

On May 2, 1986, appellees commenced the instant equity action to enjoin appellants, Theodore W. Thimons, Jr. and Eileen R. Thimons, from conducting an accounting business in their residence.[1] Appellees are four couples who reside in single-family dwellings in close proximity to appellants in the Forest Ridge Plan, Hampton Township, Allegheny County, Pennsylvania. All couples, including the Thimonses, took their respective lots subject to a restrictive covenant limiting the lots to "residential uses." Since approximately January, 1986, after the Thimonses moved into their

---

1. Appellees also filed an amended complaint to join Raymond H. Smith, Jr. and Mary Jo Smith, as additional defendants. The Smiths are not parties to this appeal.

residence in the Forest Ridge Plan, Mr. Thimons began using part of the residence as an accounting office. Appellants admit that Mr. Thimons maintains and operates an accounting office consisting of an office and reception area in the basement of their residence in the Forest Ridge Plan.[2] On December 1, 1986, appellees filed a motion for summary judgment on the grounds that, *inter alia*, Mr. Thimons' operation of an accounting business in his residence violated the restrictive covenant thereby entitling appellees to enforcement of the covenant as a matter of law. Thereafter, appellants responded with an answer to appellees' motion and also filed a cross-motion for summary judgment. On December 15, 1987, the trial court granted appellees' motion for summary judgment and denied appellants' cross-motion. This timely appeal followed.[3]

■ Appellants' first contention is that the trial court erred in finding that the restrictive covenant prohibits appellants from using their property as a residence and professional office. The covenant in question provides:

The following shall be restrictions on the use of the Properties which shall run and bind the land:

(a) None of the Lots shall be used for any purpose other than for residential uses.

Record at 12–a. Initially, we note that:

"Restrictive covenants which restrict the use of property, although not favored by the law, are legally enforceable." We will find a use to be in violation of a restrictive covenant only if it is in clear defiance to the provisions imposed by the covenant. "Such restrictions [must be]

---

**2.** For nine months of the year, Mr. Thimons' primary place of business is his office located in his home. Of the remaining three months of the year, Mr. Thimons spends an equal amount of time working in his residential office and in a business location. Sixty-percent of Mr. Thimons' annual income results from the business he conducts from his residential office.

**3.** This appeal is properly before us. *See Ortiz v. Ra–El Development Corp.*, 365 Pa.Super. 48, 51–52, 528 A.2d 1355, 1357 (1987) (An order granting summary judgment in favor of several defendants is appealable as a final order.).

strictly construed and will not be extended by implication."

*Morean v. Duca,* 287 Pa.Super. 472, 475, 430 A.2d 988, 990 (1981) (citations omitted). In determining whether the covenant delineated *supra* prohibits appellants' use of their property as residence and professional office, we must consider the meaning of the phrase "residential uses." " 'Residence,' in its popular as well as its dictionary sense means a place of abode; it is where one lives, either alone, or with one's family...." *Gerstell v. Knight,* 345 Pa. 83, 85, 26 A.2d 329, 330 (1942) (footnote omitted). We agree with the trial court that "[t]he exclusionary language 'none ... shall be used for any purpose other than for residential uses' expressly and unambiguously prohibits all uses not residential...." Opinion at 3. Appellants' accounting practice constitutes non-residential use of their property and, therefore, is violative of the restrictive covenant. *See Haskell v. Gunson,* 391 Pa. 120, 137 A.2d 223 (1958).

Appellants, however, maintain that, because the word "use" is in its plural form, the phrase "residential uses" permits "residential and mixed residential uses." Appellants' brief at 8. Appellants write: "The Restrictive Covenant, if not expressly permitting the type of dual use made by Mr. Thimons (as both a residence and professional home office), is, at the very least, ambiguous as to such mixed use." Appellants' brief at 8 (footnote omitted). If we were to agree with appellant, we would be expanding the plain meaning of "residential" to include professional practice. This we refuse to do.

We find the language of the instant covenant similar to the language of the covenant in *Morean, supra.* In *Morean,* appellants were owners of residences in or near a development. A restrictive covenant contained in the deeds to appellants' property provided that use of the property was limited to "residential and recreational purposes only." Shortly after moving to the development, appellee began using his garage to conduct an automotive and tractor repair business and, thereafter, for repairing and selling

snowmobiles. Appellants sought to enjoin the operation of appellee's business. This Court found that the language of the covenant was unambiguous in prohibiting all uses that were neither residential nor recreational and, therefore, concluded that appellee's commercial activities violated the restriction. Similarly, in the instant case, the language employed in drafting the covenant is unambiguous in prohibiting appellants from using their property for conducting a profession or business. We disagree with appellants' claim that *Morean* is distinguishable because the language of the covenant in *Morean* is "stated in the affirmative and contained an express limitation by utilizing the term 'only.'" Appellant's brief at 8. Simply because the language is written in the negative does not make it less clear. Moreover, the words "none" and "any," likewise, specify an express limitation. Accordingly, we find that the clear language of the instant restrictive covenant prohibits appellants from using their property as both a residence and professional office.

▆ Having concluded that the pertinent language is unambiguous, we find the trial court did not abuse its discretion in refusing to admit or consider extrinsic evidence of the declarants' intent in construing the restrictive covenant. *See Wysinski v. Mazzotta*, 325 Pa.Super. 128, 132–33, 472 A.2d 680, 683 (1984) ("With respect to unambiguous deeds, a court must ascertain what is the meaning of the words used, not what may have been intended by the parties as shown by parol."); *see also Mscisz v. Russell*, 338 Pa.Super. 38, 41, 487 A.2d 839, 841 (1984).

▆ Appellants next argue that appellees are not entitled to summary judgment in the absence of any proof of damages or substantial benefit in enforcement of the restrictive covenant. It is true that equity will not enforce a restrictive covenant in the absence of any benefit to the party seeking enforcement of the covenant. *Loeb v. Wat-*

*kins,* 428 Pa. 480, 240 A.2d 513 (1968).[4]

■ We, however, disagree that appellees failed to demonstrate that they will not benefit from the enforcement of the instant covenant.

A motion for summary judgment may properly be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). The court's function is not to decide issues of fact but to

4. Justice Musmanno and Chief Justice Bell, contrary to the majority position in *Loeb,* would not require proof of substantial benefit. Justice Musmanno wrote:

Restrictive covenants are enforceable without the necessity of showing that the enforcement would work a substantial gain to the legal beneficiary of the covenant. The plaintiff's right here to enforce the restrictive covenant is absolute, regardless of proof that they do or do not suffer damage as a result of the breach of the covenant. *Id.,* 428 Pa. at 484–85, 240 A.2d at 516. This view is consistent with the general rule in other jurisdictions. *See, e.g., Marshall v. Adams,* 447 S.W.2d 57 (Ky.1969); *Freehling v. Development Management Group, Inc.,* 75 Ill.App.3d 243, 30 Ill.Dec. 610, 393 N.E.2d 646 (1979); *Dice and Dice v. Central Natrona County Improvement and Service District,* 684 P.2d 815 (Wyo.1984); *Taylor v. Kohler,* 507 So.2d 426 (Ala.1987); *Breeling v. Churchill,* 228 Neb. 596, 423 N.W.2d 469 (1988); *Lakeshore Property Owners Association, Inc. v. Delatte,* 524 So.2d 126, 129 (La.App. 4 Cir.1988). The underlying rationale is set forth in *Marshall, supra.:*

"The evidence as to whether appellant's property was damaged by the violation of the agreement was conflicting, *but we do not think that was a material question.* In (citation omitted) the court, in discussing the enforcement of negative covenants in courts of equity, said it was well settled that equity would entertain bills for injunctions to prevent their breach although the breach would cause no substantial injury or although the damages might be recoverable in an action at law. '*This is upon the principle that the owner of land selling or leasing it may insert in his deed or contract just such conditions or covenants as he pleases touching the mode of enjoyment and use of the land.*' As said in Steward v. Winters, 4 Sandf.Ch. (N.Y.) 587: 'He is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. *He has a right to define the injury for himself, and the party contracting with him must abide by the definition.*'" (emphasis added)

determine whether there is an issue of fact to be tried. The court must examine the record in the light most favorable to the nonmoving party, with any doubts resolved against the moving party. *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 476 A.2d 928 (1984). *Gerace v. Holmes Protection of Philadelphia*, 357 Pa.Super. 467, 471, 516 A.2d 354, 357, *alloc. dn.* in 515 Pa. 580, 527 A.2d 541 (1986). In the case *sub judice*, there is no genuine issue of material fact as to whether enforcement of the covenant would result in substantial benefit to appellees. Appellees have established that: (1) Forest Ridge is a residential neighborhood, with the exception of a sales office maintained by its developer, Mr. Raymond Smith, Jr.; and (2) Mr. Thimon's office has resulted in increased visitors and traffic in the neighborhood. It is, therefore, clear that appellees forfeit the benefits associated with residential living if the restrictive covenant is not enforced. Consequently, we find appellants' contention is without merit.

■ Appellants also contend that appellees are precluded from obtaining relief on the basis of equitable estoppel. Specifically, appellants maintain that appellees are equitably estopped from seeking enforcement of the restrictive covenant because they failed to object to the sales office maintained in the Forest Ridge Plan by Mr. Smith.[5] We disagree.

Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken. When a party "by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or

*Marshall, supra,* 447 S.W.2d at 59, citing with approval the rationale of the Illinois Supreme Court in *Hartman v. Wells,* 257 Ill. 167, 100 N.E. 500 (1912).

5. Appellants failed to plead equitable estoppel as an affirmative defense in their answer to appellees' complaint; however, the defense was raised in the answer to appellees' motion for summary judgment. Consequently, the issue is not waived. *See Norris v. Wood,* 336 Pa.Super. 305, 485 A.2d 817 (1984). Appellants also raised the issue in their cross-motion for summary judgment.

through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts ... the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, over a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct, or statements."

The essential elements of estoppel are "an inducement by the party sought to be estopped to the party who asserts the estoppel to believe certain facts to exist—and the party asserting the estoppel *acts in reliance on that belief.*" [Emphasis in original.]

*Blofsen v. Cutaiar,* 460 Pa. 411, 417, 333 A.2d 841, 843–844 (1975) (citations omitted).

Instantly, appellants failed to demonstrate that genuine issues of fact existed regarding whether appellees induced appellants to believe they could maintain and operate an accounting office in their residence and, whether appellants relied on such belief. Instead, the record indicates that Mr. Thimons relied upon representations made by a real estate agent and Mr. Smith that the area in question was zoned for operation of professional offices. Again, we find appellants' contention meritless.[6]

---

**6.** *Young v. Cerone,* 338 Pa.Super. 280, 487 A.2d 965 (1985), does not support appellants' contention. In *Young,* property owners sought an injunction to force next-door neighbors to dismantle a fence and prohibit them from further construction. The property owners alleged that the fence was in violation of a deed restriction, subdivision 6. Judgment was entered in favor of the property owners. On appeal, appellants argued, *inter alia,* that appellees were equitably estopped from asserting violation of subdivision 6 because appellees, themselves, violated subdivision 6 by constructing a dog kennel in the yard. This Court agreed, stating:

> The residential character of Crestmont Farms, with its proliferation of children and pets and the presence of fences built without objection, demonstrates that Subdivision 6 is no longer viable. For the owners of lots in the development, fences now are of value, in securing children and pets and in preventing trespassing, particularly into dangers like backyard swimming pools and kennels. This is most likely why the great majority of Crestmont Farms residents

■ Finally, appellants maintain that the trial court's failure to comply with Pa.R.C.P. No. 1517(a) in fashioning its order invalidates the entry of the summary judgment in favor of appellees. Because Rule 1517 is inapplicable to an order granting summary judgment, we find appellants' claim meritless.

Rule 1517 states:

(a) The court shall make an adjudication and may do so before the testimony has been transcribed. The adjudication shall consist of (1) a statement of the issues; (2) a closely condensed chronological statement, in narrative form or in separate findings, of all the facts which are necessary to be known in order to determine the issues; (3) a discussion of the questions of law involved and the court's conclusions of law and (4) a decree nisi.

(b) The adjudication may be made orally in open court at the end of the trial, and in that event shall be forthwith transcribed and filed in the office of the prothonotary, or it may be made thereafter in writing and filed forthwith. In either event the prothonotary shall notify all parties or their attorneys of the date of filing.

Pa.R.C.P. § 1517, 42 Pa.C.S.A.

An order granting summary judgment is not an "adjudication" under this rule. "The adjudication referred to in Rule 1517 is the chancellor's *proposed* final disposition of a complaint after trial...." *U.S. National Bank in Johnstown v. Johnson,* 506 Pa. 622, 628, 487 A.2d 809, 812 (1985) (emphasis in original). This difference is evident in the

have not objected to fence construction: without it, they bear a higher risk of suits arising out of trespassers' injuries in accessible pools or from unsecured dogs, and of injuries and property damage to themselves from trespassers and roaming dogs. The facts show that Crestmont Farms has changed so that Subdivision 6, to the extent that it controls fence construction, is obsolete. The chancellor erred in concluding that appellants had not carried their burden of proving this change.

*Id.,* 338 Pa.Superior Ct. at 289, 487 A.2d at 969–970. Instantly, the record does not indicate the existence of a genuine issue as to a change in the surroundings of the Forest Ridge Plan so that the instant restrictive covenant no longer serves its original purpose.

appealability of an order granting summary judgment and a Rule 1517 adjudication which includes a *decree nisi.* In *In re Adoption of Hamilton,* 362 Pa.Super. 249, 523 A.2d 1176 (1987), this Court stated:

Pennsylvania Rule of Civil Procedure 1517 provides that, in equity actions, the court shall proceed by entering an adjudication including a decree nisi. Post-trial practice then proceeds in accordance with Pa.R.C.P. 227.1 which requires the filing of a motion for post-trial relief from an adjudication or decree nisi.

*Id.,* 362 Pa.Superior Ct. at 251, 523 A.2d at 1177. Moreover, in *Miller v. Miller,* 359 Pa.Super. 183, 518 A.2d 841 (1986), this Court explained:

A Decree Nisi is a non-appealable interlocutory order which is filed so that the parties may object to and reargue the issues before the trial court. *Bogosian v. Foerder Tract Committee,* 264 Pa.Super. 84, 399 A.2d 408, 410 (1979). Only after reviewing the merits of these arguments may the chancellor enter a final Decree. [*Cooney v. Pennsylvania Osteopathic Association,* 434 Pa. 358, 359, 253 A.2d 256, 257 (1969)] "The right of appeal lies from the final decree entered by the court." *Bogosian* at 399 A.2d 410.

*Id.,* 359 Pa.Superior Ct. at 185–86, 518 A.2d at 842. By contrast, when a court enters an order granting summary judgment, no post-trial motions are required.[7] "An order granting summary judgment is final and appealable, and once summary judgment is granted, an appeal must be filed, if at all, within 30 days. *Burkhart v. Brockway Glass Co.,* 352 Pa.Super. 204, 507 A.2d 844 (1986); Pa.R. A.P. 903(a)." *Progressive Home Federal Savings and Loan Association v. Kocak,* 359 Pa.Super. 120, 122, 518 A.2d 808, 809 (1986). Consequently, we find the requirements of Rule 1517 are inapplicable to an order granting

7. Pa.R.C.P. No. 1501 makes Pa.R.C.P. No. 1035, regarding summary judgments, applicable to actions in equity. *Laspino v. Rizzo,* 40 Pa.Cmwlth. 625, 629–31, 398 A.2d 1069, 1072 (1979).

summary judgment.[8]

Order affirmed.

**8.** Appellants' reliance on *Commonwealth v. Derry Township, West.,* 466 Pa. 31, 351 A.2d 606 (1976); *Cooney v. Pennsylvania Osteopathic Association,* 434 Pa. 358, 253 A.2d 256 (1969); and *Miller v. Miller,* 359 Pa.Super. 183, 518 A.2d 841 (1981), is misplaced. These cases demonstrate the two different approaches used by this Court when the trial court fails to comply with Rule 1517 and is required to do so under the Pennsylvania Rules of Civil Procedure. One approach is to vacate and remand the appeal. The other approach is to entertain an appeal on the merits and find no waiver despite failure to file exceptions.