IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ruffed Grouse Ridge Owners' Association, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 968 C.D. 2023 |
| | : | |
| Charles Hura | : | Argued: May 7, 2024 |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE MATTHEW S. WOLF, Judge

OPINION
BY JUDGE CEISLER                               FILED:  May 31, 2024

Ruffed Grouse Ridge Owners' Association (Association) appeals from the August 10, 2023 Order of the Wayne County Court of Common Pleas (Trial Court), which granted Charles Hura's Motion for Summary Judgment, denied the Association's Motion for Summary Judgment, and declared the Association's 2021 amendment to the By-Laws of Ruffed Grouse Ridge Owners' Association (By-Laws) void *ab initio*. We affirm the Trial Court's Order.

## Background

The Association is a nonprofit corporation located in Lakeville, Pennsylvania. Reproduced Record (R.R.) at 83a, 328a. The Association was established in 1987 under the Nonprofit Corporation Law of 1972, which was renumbered and amended in 1988, 15 Pa. C.S. §§ 5101-6145 (Nonprofit Law). Mr. Hura purchased a home located at 14 Ruffed Grouse Ridge Drive (Property) in the Association in 2020.[1]

---

[1] The Trial Court outlined the chain of title for the Property as follows:

**(Footnote continued on next page…)**

Since 2021, Mr. Hura has rented the Property to private parties and has advertised the Property on various rental websites, including AirBnB.com, Vrbo.com, and his own rental website, SelectRentals.net. The length of most rentals is Friday through Sunday. Mr. Hura rented the Property for 149 days in 2021 and for 105 days in 2022 on a non-consecutive basis to different groups of individuals. Mr. Hura uses the Property as his own vacation home when he is not renting it to private parties.[2]

A Schedule of Protective Restrictions (Restrictions) is incorporated into Mr. Hura's deed for the Property. The Restriction at issue in this case (restrictive covenant) states: "The above-described premises shall not be subdivided, and *any building to be erected thereon, shall not at any time be used for commercial purposes, but the use of the same shall be limited strictly to private residential purposes only*." R.R. at 27a (emphasis added).[3] The Restrictions are also expressly incorporated into the Association's By-Laws. *Id.* at 26a.

---

The Property was deeded throughout the chain of title as follows: from James J. and Arlene B. Gelatt to Arthur W. Avery, Joseph M. Russell, Jr. and Joseph M. Russell, Sr. in 1973; from Arthur W. Avery, et al. to Ruffed Grouse Ridge, Inc. 1975; from Ruffed Grouse Ridge, Inc. to William Flynn and Joseph Mucciolo in 1976; from William Flynn and Joseph Mucciolo to Joseph and Theresa Mucciolo in 1989; from Joseph and Theresa Mucciolo to John J. and Susan J. Gogarty in 2004; and from John J. and Susan J. Gogarty to [Mr.] Hura in 2020.

Trial Ct. Op., 8/10/23, at 1 n.1.

[2] At his deposition, Mr. Hura testified that he presently resides in Hoboken, New Jersey, and owns six properties, including the Property at issue here. R.R. at 189a-90a.

[3] The preface to the Restrictions states: "The said land herein conveyed is subject to the following restrictions, covenants and conditions[,] which bind the said land herewith conveyed, in the hands of all Grantees, their heirs and assigns, and mutually bind all lots conveyed, subject to said restrictions, covenants, and conditions." R.R. at 27a.

In September 2021, the Association's Board of Directors proposed an amendment to the By-Laws that would prohibit the Association's members and "property owner[s] in the . . . [d]evelopment" from renting their properties for periods of less than 30 days. *Id.* at 90a. The proposed amendment also stated that any property rental for a period of less than 30 days is considered a short-term rental and a prohibited commercial activity and that a violating member or property owner must pay a fine of $100 for a first offense, $500 for a second offense, and $1,000 for a third offense. *Id.* Under Article VII, Section 2 of the By-Laws, an amendment "requires a 75% affirmative vote by those voting in person or by proxy." *Id.* at 25a. In December 2021, the short-term rental amendment was approved and ratified by the Association's membership. The Association notified its members of the amendment's adoption by letter dated December 13, 2021. *Id.* at 99a-100a.

On March 31, 2022, the Association sent a cease-and-desist letter to Mr. Hura, notifying him that his use of the Property for short-term rentals is a prohibited commercial activity and a clear violation of the restrictive covenant. The Association explained:

> Clearly, your use of the property as a [s]hort-[t]erm [r]ental is a commercial entity. It is not being used for private residential purposes. A private residential purpose is the individual homeowner . . . using the home. The use of your home to allow individuals who are not residents of the Association, [who] are not family members[,] but rather individuals renting your home from week to week[] or less than thirty (30) days is a commercial entity.

*Id.* at 30a. The Association also stated that "there was an [a]mendment to the By[-L]aws of [the] Association[,] which specifically prohibits the rental of any home in the development in whole or in part for any period of time less than [30] days." *Id.*

3

The Association directed Mr. Hura to "halt the rental of [his] home as a [s]hort[-t]erm [r]ental" in order to avoid "litigation in the future." *Id.*

On June 10, 2022, Mr. Hura sent a letter to the Association stating that under the By-Laws, "[t]he "Association is a VOLUNTARY association which homeowners in the [d]evelopment may join upon purchasing their propert[ies]" and, therefore, he "opted to withdraw from membership in the Association." *Id.* at 58a (citing By-Laws) (capitalization in original); *see id.* at 60a.

On June 21, 2022, the Association filed a Complaint against Mr. Hura in the Trial Court, alleging that Mr. Hura's rental activity at the Property violated both the restrictive covenant and the By-Laws. The Association averred that Mr. Hura, "as a member of the Association, is bound by the [r]estrictive [c]ovenant[] . . . that run[s] with the Property," which prohibits the Property from being used for "commercial purposes" and restricts its usage to "private residential purposes only." R.R. at 4a-5a. The Association also averred that Mr. Hura had breached the restrictive covenant "by continuing to rent the [P]roperty for periods of less than [30] days." *Id.* at 8a. Finally, the Association averred that Mr. Hura had breached Article III, Section 5 of the amended By-Laws, which prohibits "[t]he leasing of any residence, in whole or in part, for any consideration for a period of less than [30] days." *Id.* at 5a. The Association sought a permanent injunction "requiring [Mr. Hura] to remove all short-term rental listings for the [P]roperty as well as halt the actual renting of the [P]roperty for less than [30] days." *Id.* at 6a.

On July 27, 2022, Mr. Hura filed an Answer, New Matter and Counterclaim, asserting, *inter alia*, that: (1) he is no longer a member of the Association; (2) his only obligation to the Association is to pay assessments for maintenance of the

4

common easements; and (3) the Association may not amend its By-Laws to restrict his use of the Property without his consent.

Thereafter, both parties filed Motions for Summary Judgment and supporting briefs. On August 10, 2023, after oral argument, the Trial Court issued an Opinion and Order granting Mr. Hura's Motion for Summary Judgment and denying the Association's Motion for Summary Judgment.

In its Opinion, the Trial Court began by noting that the parties had agreed that there were no genuine issues of material fact in dispute.[4] As such, the Trial Court was only required to "determine whether, based upon evidence of record, [Mr. Hura's] rental activity constitutes a violation of the restrictive covenant[] and whether [he] is liable for violating [the Association's] By[-L]aw amendment prohibiting property rentals for a period of less than [30] days." Trial Ct. Op., 8/10/23, at 4.

After reviewing the law governing the interpretation of restrictive covenants, the Trial Court determined:

> [T]he language of the restrictive covenant is as follows: "The above-described premises shall not be subdivided, and any building to be erected thereon, shall not at any time be used for commercial purposes, but the use of the same shall be limited strictly to private residential purposes only." When considering the language in accordance with the aforementioned [legal] standards, *the [Trial] Court finds that: the residential use of [Mr. Hura's] property is not restricted to owner-occupied residential use; the rental of the property is not prohibited; and no distinction is made between short-term and long-term rentals.* The [Trial] Court finds that the plain language of the restrictive covenant is unambiguous in these respects.

*Id.* at 5 (emphasis added).

---

[4] *See* R.R. at 433a, 436a-37a (during argument on the Motions for Summary Judgment, the parties agreed that the facts of the case are not in dispute).

Next, the Trial Court analyzed "whether [Mr. Hura's P]roperty is being used for 'private residential purposes' or 'commercial purposes' based upon the uncontested facts in the record." *Id.* The Trial Court observed that "courts in the vast majority of jurisdictions have found that a covenant requiring that a property be used for 'residential purposes' did not prohibit short-term renting upon examination of the *renter's activities on the property* rather than the owner's personal use of the property." *Id.* at 6 (citing treatise) (emphasis added). The Trial Court also relied on a 2014 opinion issued by the Carbon County Court of Common Pleas in a case involving very similar facts. The Trial Court ultimately concluded:

> Based upon the facts presented, [*Mr. Hura's P*]*roperty is being used for residential purposes.* The [Trial] Court rejects [the Association's] argument that it should instead focus on [Mr. Hura's] business uses. *The inhabitants of the Property, whether it be [Mr. Hura], [his] family and friends, or renters, are using the Property in its entirety to sleep, eat, bathe and generally reside for a short-term period.* However, the [Trial] Court *does* find problematic any language in [Mr. Hura's] advertisements that invites potential renters to use the Property for any commercial or business purpose, such as for a "corporate retreat." *To comply with the restrictive covenant, [Mr. Hura] must eliminate any such language from advertisements and ensure that no commercial activity is conducted on the Property.*

*Id.* at 7 (emphasis added).

Lastly, the Trial Court concluded that the Association's 2021 By-Law amendment was void *ab initio*, finding that the Association "did not have the authority, pursuant to the Nonprofit . . . Law . . . , to amend its [B]y[-L]aws and alter property owners' rights without all of their consents" and that the "amendment implemented specific use restrictions beyond the terms of the restrictive covenant." *Id.* at 7-8.

6

The Association now appeals to this Court.[5]

## Analysis

On appeal, the Association asserts that the Trial Court erred in concluding that Mr. Hura's rental of his Property to private parties did not violate the restrictive covenant. The Association asserts that the covenant's express limitation of the Property's use to "residential purposes only" means that *only* the owner and/or his family members may reside at the Property. Ass'n Br. at 15-16. However, according to the Association, Mr. Hura instead "treats the [P]roperty very much like a hotel and makes income on same." *Id.* at 10. Therefore, the Association contends that Mr. Hura's use of the Property to generate rental income is commercial in nature and a clear violation of the restrictive covenant. We disagree.

We begin our analysis by reviewing the legal principles applicable to restrictive covenants. Our Supreme Court has stated: "Although the law may disfavor restrictions on an owner's free use and enjoyment of the real property, restrictive covenants are legally enforceable." *Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor*, 855 A.2d 873, 879 (Pa. 2004). "It is a fundamental rule of contract interpretation that the intention of the parties at the time of the contract governs and that such intent must be ascertained from the entire instrument." *Id.* This same principle applies to the interpretation of restrictive covenants. *Id.*

Furthermore, the Pennsylvania Superior Court has explained:

> [T]here is an important difference in the rule of interpretation as applied to restrictive covenants on the use of land. Restrictive covenants are limitations on a person's "free and unconstrained use of property." They are not favored by the law, yet they are legally enforceable. As

[5] Our standard of review on appeal from the Trial Court's grant or denial of summary judgment is *de novo*, and our scope of review is plenary. *Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 485 (Pa. Cmwlth. 2018).

7

such, *they are to be strictly construed against persons seeking to enforce them and in favor of the free and unrestricted use of property.*

*As a matter of law, nothing short of a "plain disregard" of the restrictive covenant's express terms can create [a] violation of the covenant.*

*Pocono Summit Realty, LLC v. Ahmad Amer, LLC*, 52 A.3d 261, 269 (Pa. Super. 2012) (internal citations omitted) (emphasis added); *see Great Atl. & Pac. Tea Co. v. Bailey*, 220 A.2d 1, 3 (Pa. 1966) ("[I]t has long been the law that the ambiguity in a restrictive covenant must be construed *against the one to be benefited by the restriction*.") (emphasis added). Our courts will "enforce a restriction if a party's actions are *in clear defiance of the provisions imposed by the covenant*." *Vernon Twp.*, 855 A.2d at 879 (emphasis added).

To determine whether the restrictive covenant prohibits Mr. Hura from renting his Property to private parties, we must consider the covenant's express language. The restrictive covenant limits the use of the Property to "private residential purposes only" and prohibits the use of the Property and any buildings constructed thereon, now and in the future, "for commercial purposes." R.R. at 27a. Notably, the Association cites no case law supporting its contention that renting out one's property for profit constitutes a commercial use prohibited by the restrictive covenant. In fact, before the Trial Court, the Association admitted, through counsel, that the acts of leasing one's property and collecting rent, in and of themselves, are *not* prohibited by the restrictive covenant. *See* R.R. at 440a-41a. The Association also admitted that a property owner in the development would "[a]bsolutely" be permitted to rent out his or her home on an annual basis, or even for a period of six months, and collect monthly rent payments without violating the covenant. *See id.*

8

Having abandoned its initial position that rentals alone constitute a commercial use, the Association argued instead that it is the "transient" nature of "short-term" rentals that violates the restrictive covenant, *see id.* at 438a-41a, an argument it reiterates on appeal. *See* Ass'n Br. at 16. However, the Association incorrectly focuses on the *duration* of the rentals rather than on the *purpose* of the renters' *physical use* of the Property. *See* Trial Ct. Op., 8/10/23, at 6 ("[C]ourts in the vast majority of jurisdictions have found that a covenant requiring that a property be used for 'residential purposes' did not prohibit short-term renting upon examination of *the renter's activities on the property* rather than the owner's personal use of the property.") (citing treatise) (emphasis added).

Construing the language of the restrictive covenant strictly against the Association, as we must, we conclude that Mr. Hura's rental of the Property to private parties, whether on a short-term or long-term basis, does not violate the restrictive covenant, provided that the renters use the Property *solely for residential purposes*. As the Trial Court correctly found, the plain language of the restrictive covenant does not limit the Property to the owner's residential use; does not prohibit rental of the Property; and makes no distinction between short-term and long-term rentals. Trial Ct. Op., 8/10/23, at 5. Here, the evidence of record establishes that both Mr. Hura *and* his renters use the Property for "private residential purposes only." In other words, "[t]he inhabitants of the Property, whether it be [Mr. Hura], [his] family and friends, or renters, are *using the Property in its entirety to sleep, eat, bathe and generally reside* for a short-term period." *Id.* at 7 (emphasis added); *see Baumgardner v. Stuckey*, 735 A.2d 1272, 1274 (Pa. 1999) ("The term 'residence,' in its popular as well as its dictionary sense, means place of abode; it is where one lives, either alone, or with one's family[] . . . .") (citation omitted).

9

Moreover, while it is unclear from the record when the Restrictions were first imposed on the lot owners, the Association acknowledged before the Trial Court that short-term, AirBnB-type property rentals were not contemplated at that time.  *See* R.R. at 441a-42a (the Association's counsel stated: "[N]obody wrote the [R]estrictions thinking of short-term rentals.  You know that and I know that."); *see also Vernon Twp.*, 855 A.2d at 879 (stating that, in interpreting a restrictive covenant, "the intention of the parties at the time of the contract governs and . . . such intent must be ascertained from the entire instrument").

Considering the plain language of the restrictive covenant, and the fact that short-term rentals were not contemplated at the time of its creation, we believe the intent of the covenant was to prohibit the Property from being physically used to operate a business or commercial enterprise, such as a professional office, retail store, or corporate meeting space, *not* to prohibit rental of the Property to private individuals for residential use.  This interpretation is also consistent with prior case law involving similarly worded restrictive covenants requiring that a property be used "for residential purposes only."  *See, e.g.*, *Baumgardner*, 735 A.2d at 1274-75 (holding that a restrictive covenant stating that "[n]o lot shall be used except for residential purposes" prohibited the appellee from storing his commercial tractor-trailers on the property); *Grasso v. Thimons*, 559 A.2d 925, 928 (Pa. Super. 1989) (concluding that the clear language of the restrictive covenant, stating that "none of the lots shall be used for any purpose other than for residential uses," prohibited the appellants from using their property as both a residence and a professional office for their accounting practice); *Morean v. Duca*, 430 A.2d 988, 990 (Pa. Super. 1981) (holding that the phrase "used for residential and recreational purposes only" prohibited the commercial use of a garage on the property as an automobile and

10

snowmobile repair shop).  Thus, the Trial Court properly clarified that "any language in [Mr. Hura's] advertisements that invites potential renters to use the Property for any commercial or business purpose, such as for a 'corporate retreat,'" is prohibited. Trial Ct. Op., 8/10/23, at 7.[6]

Finally, we conclude that the Association's reliance on dicta in *Slice of Life, LLC v. Hamilton Township Zoning Hearing Board*, 207 A.3d 886 (Pa. 2019), to support its position is misplaced.  In *Slice of Life*, our Supreme Court held that the operation of "a transient lodging business," such as an AirBnB, was impermissible in a residential zoning district.  The Court's decision, however, was based on its interpretation of specific terms and phrases in the applicable zoning ordinance, including "family" and "single housekeeping unit," none of which are at issue here. For this reason, we conclude that *Slice of Life* is inapposite.[7]

---

[6] During oral argument on May 7, 2024, Mr. Hura's counsel informed this Court that Mr. Hura has since complied with the Trial Court's directive and removed such language from any rental advertisements for the Property.

[7] In *Slice of Life*, the Supreme Court held that a zoning ordinance permitting single-family detached dwellings to be used by "families," which was defined as requiring a "single housekeeping unit," precluded transient uses of property, including short-term rentals.  The Court explained its reasoning as follows:

> *The use of the [p]roperty is not by a "family" because the users do not function as a "family" as defined by the [o]rdinance.  There is no ambiguity in the language of the [o]rdinance because there is no ambiguity in the phrase "single housekeeping unit" that is at the heart of the definition of "family."*  Zoning District A permits the use of a single-family detached dwelling.  This requires use by a single housekeeping unit.  *This Court has clearly and straightforwardly defined single housekeeping unit as precluding purely transient use.*

*Slice of Life*, 207 A.3d at 903 (emphasis added).

11

## Conclusion

Regarding restrictive covenants imposed on the use of land, "[a]s a matter of law, nothing short of a *'plain disregard' of the restrictive covenant's express terms* can create [a] violation of the covenant." *Pocono Summit*, 52 A.3d at 269 (citation omitted) (emphasis added). Applying the ordinary meaning of the language of the restrictive covenant at issue in this case, we conclude that Mr. Hura's rental of the Property to private individuals who use the Property exclusively for residential purposes is not a "plain disregard" of the covenant's terms.[8] Accordingly, we affirm the Trial Court's Order.

_____

ELLEN CEISLER, Judge

---

[8] In the Statement of Questions Involved section of its brief, the Association also asserts that the Trial Court erred in declaring the 2021 By-Law amendment void *ab initio*. *See* Ass'n Br. at 4. However, the Association fails to develop or provide any legal analysis of this issue in the body of its brief. The Association's only reference to the amendment in the Argument section is the following statement: "Even assuming, for argument's sake, that *Slice of Life*[], does not persuade this Court that the Association has the ability via its [B]y[-L]aws to limit short[-]term commercial rentals, [Mr. Hura] is in violation of the restrictive covenants governing the [P]roperty." *Id.* at 18. Therefore, we conclude that the Association has waived this claim. *See Com. v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); Pa.R.A.P. 2119(a) (stating that the argument section of an appellate brief must contain "such discussion and citation of authorities as are deemed pertinent").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ruffed Grouse Ridge Owners'     :
Association,     :
          Appellant     :
    :
          v.     :   No. 968 C.D. 2023
    :
Charles Hura     :

## **O R D E R**

AND NOW, this 31st day of May, 2024, the August 10, 2023 Order of the Wayne County Court of Common Pleas is hereby AFFIRMED.

 

_____
ELLEN CEISLER, Judge