654 A.2d 1183

**Ann E. PERRIGE and Thomas M. Goutman, Appellants,**

**v.**

**Elton HORNING, Mark Herr, Elton Horning Farm Agency, Titus Kurtz and Esther Kurtz.**

Superior Court of Pennsylvania.

Argued Oct. 18, 1994.

Decided Feb. 15, 1995.

34

David E. Sandel, Jr., Philadelphia, for appellants.

Bryon M. Yatron, Reading, for appellees.

Before BECK, HUDOCK and BROSKY, JJ.

BECK, Judge.

Plaintiffs-appellants Anne E. Perrige and Thomas M. Goutman appeal from an order sustaining the preliminary objections of defendants-appellees Elton Horning, Mark Herr, Elton Horning Farm Agency, Titus Kurtz and Esther Kurtz, and dismissing appellants' Second Amended Complaint in Equity.[1] We reverse and remand.

In reviewing a dismissal based on preliminary objections in the nature of a demurrer, we must accept all well-pleaded material facts in the complaint, and all reasonable inferences therefrom, to decide whether the law will permit recovery. *Baker v. Magnetic Analysis Corp.*, 347 Pa.Super. 188, 500 A.2d 470 (1985). Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Muhammad v. Strassburger*, 526 Pa. 541, 548, 587 A.2d 1346, 1349 (1991).

Under this standard, our review of the record establishes the following relevant facts. Appellees Kurtzes were the owners of a 127.339 acre farm located in Robeson Township, Berks County, Pennsylvania. The Kurtzes retained surveyors to draft plans for the subdivision of the farm into four parcels (Lots 1 through 4). A plan finally was approved by the Robeson Township Planning Commission on or about February 3, 1992, and by the Robeson Township Board of Supervisors on or about February 18, 1992 (the "Plan"). The Plan also was filed of record in the Office of Recorder of Deeds of Berks County. The Plan contains several printed "General Notes" which provide, in relevant part:

2. TOTAL NUMBER OF LOTS 3 + RESIDUE (TO REMAIN FARM USE) A) LOT NO. 4 (RESIDUE) WILL BE USE [sic] FOR AGRICULTURAL USE ONLY.

.     .     .     .     .

1. In response to earlier preliminary objections, appellants amended their initial Complaint and their First Amended Complaint.

9. THE RESIDUE LOT WAS AND WILL REMAIN AGRICULTURAL USE, NO WETLAND DELINEATION IS REQUIRED.

10. IF LOT 4 IS SUBDIVIDED OR DEVELOPED IN THE FUTURE WETLAND DELINEATION, STREAM ENCROACHMENT PERMITS ARE REQUIRED. THE 100 YEAR FLOOD PLAIN MUST BE CALCULATED, BOUNDARIES DELINEATED, AND ELEVATIONS PROVIDED.

Beginning in October 1991, the appellants and the Kurtzes entered into an initial Agreement of Sale for the purchase of Kurtzes' Lot 3. Appellees Horning, Kerr and Elton Horning Farm Agency were the real estate agents involved in the transaction. Appellants allege in their complaint that "[i]n response to direct questions, ... posed at various times, concerning what [the Kurtzes] planned to do with Lot 4, which abuts Lot 3, [appellees] all represented that the Kurtz[es] purchased the Farm because one of the Kurtz sons had graduated from high school and was now farming with his father." Appellants also allege that the Kurtzes stated they "intended to use Lot 4 for farming purposes only" and that they were " 'going to farm Lot 4,' and other words to that effect." Second Amended Complaint, paragraph 23.[2] In addition, appellants allege that appellees knew "if Lot 4 were to be used for any purpose other than agricultural, that [appellants] would not purchase Lot 3." Second Amended Complaint, paragraph 24.

Over the next several months, the settlement date was postponed numerous times, the purchase price was lowered, and several addenda to the original Agreement were executed, to reflect these and other changes. The parties actually

2. An earlier complaint included an allegation that the Kurtzes "presently" intended to farm the residue lot 4. According to appellees, this proves they did not make any promises about future use. Appellees base this conclusion on the proposition that allegations in previous complaints still are applicable as admissions even where the complaint subsequently has been amended or superseded. *Stewart v. Hooks*, 372 Pa. 542, 544–45, 94 A.2d 756, 757 (1953).

closed on June 11, 1992, as reflected by the deed. The deed describes the lot as that "situate in Robeson Township, Berks County, Pennsylvania, bounded and described according to a Final Plan of the Kurtz Subdivision ... dated August 22, 1991 and last revised February 19, 1992...."

Furthermore, the parties also executed an "Addendum to Agreement of Sale" which contains several typewritten conditions, some of which have been crossed out or amended in handwriting, and each change was initialled by the Kurtzes and appellants. In pertinent part, these conditions provide:

. . . .

d. Titus Kurtz shall comply with any and all township requirements imposed as conditions for approval of subdivision of this property.

. . . .

g. Buyers shall have the right of first refusal to purchase the approximately seventy-five (75) acres or any portion thereof that are contiguous to this property.

Finally, the following language was cancelled through by a handwritten line and initials: "f. Property retained by Titus Kurtz and Esther Kurtz shall be used for agricultural purposes."

By July 1992, soon after the closing on the sale of Lot 3 to appellants, the Kurtzes allegedly had completed and submitted to Robeson Township a new subdivision plan, which severed two parcels from Lot 4 "for the purpose of creating and selling *residential* lots." Second Amended Complaint, paragraph 39 (emphasis in original). Although this plan was not approved,[3] appellees submitted another plan, this one seeking to sever a total of three parcels from Lot 4, one for residential purposes and two for annexation to other neighboring properties. This plan was not approved. Finally, the township approved a third plan, which included the severing of two lots for annexation to the neighboring properties, allegedly not for agricultural purposes. The appellants were not offered the parcels for purchase.

---

3. Appellants opposed this new plan before the township representatives.

The appellants filed this injunction action to enforce their "right to reside next to the seventy-five (75) acre agricultural parcel," which right they allegedly purchased when they bought Lot 3 in June 1992. Second Amended Complaint, paragraph 64.

The trial court sustained the appellees' preliminary objections and dismissed the Second Amended Complaint. In this appeal, the appellants argue that the trial court erred in holding that the local planning agency has exclusive jurisdiction in this land planning matter. Appellants also challenge the court's decision that they have no standing, and that they have not been injured by appellees' actions because there are no enforceable restrictive covenants in the contracts executed by the parties. In addition, the appellants assert that the trial court's ruling that they did not properly plead agency was error, and that the dismissal of the right of first refusal claim was not sought by appellees' preliminary objections, and therefore was improper. We address each argument in turn.

## JURISDICTION

We first review the issue of subject matter jurisdiction, and the trial court's holding that the Pennsylvania Municipalities Planning Code, 53 Pa.S. § 10101 *et seq.,* vests exclusive jurisdiction over this matter in the Robeson Township Board of Supervisors. The relevant statute provides that the local planning agency "shall have exclusive jurisdiction to hear and render final adjudications in the following matters: .... (2) All applications.... for approval of subdivisions or land developments...." 53 Pa.S. § 10909.1(b)(2). We do not view this matter as an "application for approval of subdivision or land development," but rather as an action to, *inter alia,* enforce alleged restrictive covenants in a *previously approved* subdivision plan, and to enjoin the submission of additional plans which may violate those restrictions.

In fact, landowners properly have invoked our courts' equity jurisdiction to review such matters in the past. In *Ballard v. Heppe,* 403 Pa.Super. 441, 589 A.2d 266 (1991), *app. den.,* 529 Pa. 630, 600 A.2d 950 (1991), for example, this court held that

landowners could enforce by injunction certain unambiguous notes in a subdivision plan relating to future lot sizes. We also have decided that an injunction should issue to protect lot owners who were granted "protective covenants" to preserve the residential nature of a development. *Gey v. Beck,* 390 Pa.Super. 317, 568 A.2d 672 (1990). *See also Doylestown Township v. Teeling,* 160 Pa.Commw. 397, 405–07, 635 A.2d 657, 661 (1993) (conditions attached to subdivision plan as part of approval process constitute restrictive covenants running with the land and may be enforced in equity by owners of other lots in subdivision). We must therefore reverse the trial court's holding on this issue and proceed to review the other grounds for dismissal.

## RESTRICTIVE COVENANT

■ The court further held that the appellants lacked standing to bring this action,[4] and that the Plan Notes, the deed and the Agreement of Sale Addendum did not create restrictive covenants enforceable in equity. We disagree.

■ It is clear that a deed for land may incorporate by reference the conditions of a subdivision plan, and the plan conditions then become enforceable in equity by the interested deed holder. *Reed v. Reese,* 473 Pa. 321, 374 A.2d 665 (1976) (plaintiff landowner was entitled to specific relief or damages in action against later purchasers who sought to violate parkland restriction in subdivision plan). In this case, the deed makes express reference to the subdivision plan in its description of the property; the deed states that the subject land is "bounded and described according to a Final Plan of the Kurtz Subdivision." We must therefore look to the Plan to decide whether its Notes create unambiguous enforceable covenants. *Ballard v. Heppe, supra* 403 Pa.Super. at 441, 589 A.2d 266.

---

**4.** We do not completely understand this decision by the trial court. It appears to hold that, because the subject land has not yet been put to non-agricultural use, the appellants have not yet suffered a cognizable injury. However, the *prevention* of injury is in fact the goal of injunctive relief.

■ Notes 2A and 9 on the Plan clearly state that Lot 4, or "the residue lot," will remain agricultural use. Appellees argue that Note 10, which sets forth certain requirements for any future *subdivision* of Lot 4, cancels the otherwise explicit agricultural use condition. We disagree because the land may be subdivided and still remain restricted to agricultural use. We perceive no ambiguity in the Plan Notes and, therefore, a restrictive covenant would appear to exist here. In *Ballard v. Heppe, supra* 403 Pa.Super. at 441, 589 A.2d at 266, similar notes in a subdivision plan were held to create an enforceable restrictive covenant limiting lot size, despite additional plan language which provided for future changes if approved by the planning commission. 403 Pa.Super. at 441, 589 A.2d at 266.

■ Furthermore, although restrictive covenants generally are disfavored by the law, and through the passage of time or a change in condition of the neighborhood may lose utility, covenants of "recent vintage" certainly may be enforced by the granting of injunctive relief. *Gey v. Beck,* 390 Pa.Super. at 326–28, 568 A.2d at 677. *See also Grasso v. Thimons,* 384 Pa.Super. 593, 559 A.2d 925 (1989), *app. den.,* 525 Pa. 612, 577 A.2d 544 (1987) (property owners could enjoin neighbor from violating residential use only restrictive covenant). Conditions such as those contained in the Plan Notes in this case may be enforceable even when the conditions are not *specifically* set forth in the deed conveying the subject property. *See Teeling, supra* 160 Pa.Cmwlth. at 397, 635 A.2d at 672.

■ In addition to the Plan Notes, which were incorporated into the appellants' deed, the parties also executed an Agreement of Sale and an Addendum thereto, which contained additional terms.[5] Addendum term (d) provides that "Titus

---

5. Generally, an agreement of sale merges into the deed and no recovery may be had based on the earlier agreement. *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972); *Valvano v. Galardi,* 363 Pa.Super. 584, 526 A.2d 1216 (1987). Although neither the parties nor the court below raised the merger question with regard to the restrictive covenant issue, we do not consider it waived; in this appeal from the grant of a demurrer, we must determine whether the law allows recovery under the facts alleged. *Baker, supra* 347 Pa.Super. at 188, 500 A.2d 470. Nonetheless, an agreement of sale is *not* merged as to matters not to be consummated by the deed, or which are collateral to it, such as future

Kurtz shall comply with any and all township requirements imposed as conditions for approval of subdivision of this property." Through this term, as a condition of the sale to appellants, appellee Kurtz affirmed that he would comply with the Plan Notes, including those regarding the agricultural use restriction.

Another relevant addendum term, however, was cancelled. Term (f) provided that "Property retained by Titus Kurtz and Esther Kurtz shall be used for agricultural purposes," but it was crossed out and initialled by the parties prior to closing. Appellants aver in the Second Amended Complaint that:

25. Immediately prior to [appellants'] execution of the Agreement of Sale, Defendants Kurtz [sic] counsel Campbell, told [appellants] that it was not necessary for the Agreement to contain the agricultural use language since Defendant Kurtz and his son were going to continue to farm the land.

26. Moreover, at that time Defendants Kurtz had already submitted the first version of the Plan to the Robeson Township Planning Commission.... [T]he Plan stated that the land which the Defendants Kurtz were retaining was to remain in farm use only.

Notwithstanding appellants' attempt to explain the removal of the agricultural use term from the Addendum, it creates, at the very least, an ambiguity.

Restrictive covenants must be construed in light of their language, their subject matter, the intent or purpose of the parties, and the conditions surrounding their execution. *Gey v. Beck,* 390 Pa.Super. at 323–25, 568 A.2d at 675. Where an ambiguity exists we may consider extrinsic evidence of the parties' intent. *Id. Cf. Grasso v. Thimons, supra* 384 Pa.Super. at 597–99, 559 A.2d at 928. However, a court obviously may not make such factual findings of intent at the prelimi-

use of an easement *(Valvano, supra )* or enforcement of a restrictive covenant. *Shawnee Lake Assn. v. Uhler,* 131 Pa.Super. 146, 198 A. 910 (1938) (restrictive covenant regarding use of property contained in agreement transferring property did not merge into deed and covenant remained enforceable).

nary objections stage. The lower court did delve into the parties' intentions in sustaining the preliminary objections, and this was improper. We therefore must reverse the court's dismissal of appellants' action on the basis that there was no enforceable restrictive covenant, and remand for further proceedings on this issue.[6]

### RIGHT OF FIRST REFUSAL

We next address the trial court's dismissal of the claim for a right of first refusal. A party may obtain specific performance of a right of first refusal where there is no dispute that the right is valid, that the challenged conveyance was made in derogation of that right, and there is no adequate remedy at law. *Warden v. Taylor,* 460 Pa. 577, 333 A.2d 922 (1975); *Boyd & Mahoney v. Chevron U.S.A.,* 419 Pa.Super. 24, 614 A.2d 1191 (1992), *app. den.,* 535 Pa. 629, 631 A.2d 1003 (1993). Appellants base their claim to a right of first refusal of Lot 4 on term (g) of the Addendum, which provides "Buyers shall have the right of first refusal to purchase the approximately seventy-five (75) acres or any portion thereof that are contiguous to [Lot 3]." [7] The trial court dismissed the entire Second Amended Complaint without separately discussing the issue of right of first refusal.

Appellants argue that the court improperly disposed of this issue because appellees' preliminary objections did not challenge that particular claim. We previously have held that a trial court's sua sponte assertion of a defense on behalf of a party raising preliminary objections, and thereafter sustaining the preliminary objections, was error and required reversal.

6. Appellees make much of the "admission" by appellants in an earlier complaint that the Kurtzes merely "presently" intended to farm Lot 4, and that the Kurtzes therefore did not make any promises about future use. *See* footnote 2, *supra.* We note, however, that the intent of the parties at the time of contracting is crucial to the construction of the contract terms. *Gey v. Beck, supra.* Therefore, appellees' argument on this issue is not persuasive.

7. We note that appellants' Second Amended Complaint includes no allegation that the lots sold by the Kurtzes to other neighbors for annexation purposes under the newest subdivision plan are "contiguous" to Lot 3. This is an express requirement of the right of first refusal; a broader right of first refusal of all "the remaining acreage" was removed from the Addendum to the Agreement of Sale. R.R. 23.

*Wojciechowski v. Murray*, 345 Pa.Super. 138, 497 A.2d 1342 (1985). We hold that the trial court should have allowed the parties to go forward on this issue, since the appellees did not seek to dismiss the complaint on that ground.[8]

## AGENCY

Finally, we address the issue of appellants' allegations against the realtor appellees. The trial court held that agency was not sufficiently pleaded and therefore dismissed these claims. The Second Amended Complaint includes various allegations of conduct by appellees Horning, Herr and Horning Farm Agency in furtherance of the submission of subdivision plans to the planning agency and lot sales to appellants and others. The description of the "agents'" conduct is quite specific, and is introduced by the following paragraph:

> 9. At all times relevant to this case, Horning, Herr, Elton Horning Farm Agency and Attorney David G. Campbell.... acted as the duly authorized agents, servants and/or employees of Titus and Esther Kurtz. Alternatively, Titus and Esther Kurtz, Herr and Campbell acted as agents, servants and employees of Elton Horning and Elton Horning Farm Agency.

R.R. 5. We disagree with the holding below that the allegations of agency were inadequate. Instead, we note that averments of agency generally are considered as admitted facts for the purposes of demurrer, rather than as conclusions of law. *Line Lexington Lumber & Millwork, Co. v. Pennsylvania Publishing Corp.*, 451 Pa. 154, 163, 301 A.2d 684 (1973).

Moreover, the allegations of agency in this case meet the standard set forth in *Alumni Ass'n v. Sullivan*, 369 Pa.Super. 596, 535 A.2d 1095 (1987), *aff'd*, 524 Pa. 356, 572 A.2d 1209

---

8. We are unconvinced by the appellees' argument that their preliminary objections sought dismissal of the entire complaint, despite their failure to raise any specific objections regarding the claimed right of first refusal. Preliminary objections in the nature of a demurrer seek drastic relief, and courts therefore should not presume the existence of unenumerated attacks on the complaint.

(1990). *Sullivan* requires that, at a minimum, the complainant allege facts which "(1) identify the agent by name or appropriate description; and (2) set forth the agent's authority, and how the tortious acts of the agent either fell within the scope of that agency, or if unauthorized, were ratified by the principal." 369 Pa.Super. at 605, 535 A.2d at 1100. In this case, it is clear from the complaint who the alleged agents are, and that they apparently were acting through their authority as realtors for the sellers, appellees Kurtzes. Therefore, we reverse the trial court's decision on this issue as well.

Reversed and remanded for further proceedings. Jurisdiction relinquished.

BROSKY, J., files a concurring and dissenting opinion.

BROSKY, Judge, concurring and dissenting.

I agree with the majority that the trial court had subject matter jurisdiction to enforce the restrictive covenant and that appellants had standing to institute suit against appellees. I also agree with the majority that the trial court erred in *sua sponte* dismissing appellants' request for relief to enforce their right of first refusal, as appellees never requested dismissal on this basis in their preliminary objections. Further, I agree that appellants have set forth sufficient facts establishing an agency relationship between the Kurtzes and the other appellees. I accordingly join in the majority's disposition of these matters. However, I find it unnecessary to discuss the terms of the addendum to the parties' agreement of sale and any ambiguities created thereby. Hence, I write separately with respect to this issue.

The majority correctly recognizes that appellants' deed specifically references the subdivision plan, thereby incorporating the covenant into the deed even though it is not specifically set forth therein. *See* Majority opinion, *ante* at 40. The plan notes expressly provide that Lot 4, which is otherwise described therein as the residue, is "to remain farm use,"

and that it "will be use[d] for agricultural use only." As noted by the majority, this statement thus appears to create an unambiguous restrictive covenant regarding the use of lot 4.[1] Majority opinion, *ante* at 40. A review of appellant's complaint further reveals that appellants are seeking to enforce the covenant, as incorporated into their deed, rather than the terms of a prior separate agreement. *See* Second Amended Complaint at paragraphs 33, 34, 65 and 68. Under these circumstances, appellants were not required to raise the merger doctrine with respect to the restrictive covenant, because the merger rule does not affect their right to enforce the covenants incorporated into or contained in their deed. *See Elderkin v. Gaster*, 447 Pa. 118, 124 n. 11, 288 A.2d 771, 774 n. 11 (1972) (merger doctrine holds that all warranties and representations in connection with a sale or other transaction made prior to or contemporaneous with a deed are merged into the deed and that unless therein expressly provided for, they are forever lost); *Valvano v. Galardi*, 363 Pa.Super. 584, 592 n. 2, 526 A.2d 1216, 1220 n. 2 (merger doctrine provides that as a general rule an agreement of sale merges into the deed and no recovery may be had based upon an earlier agreement; the merger rule does not apply where the expressed intention of the parties is to the contrary nor does it apply as to matters intended not to be consummated by the deed issued pursuant to it and which are collateral to the deed).

Despite its discussion of the restrictive covenant issue and cognizance of the merger doctrine, the majority nonetheless proceeds to discuss paragraph d of the addendum to the parties' agreement of sale and an alleged ambiguity created by the removal of paragraph f therefrom. Majority opinion, *ante*

1. The only issue before this court is whether the chancellor erred in sustaining appellees' demurrer and dismissing appellants' complaint. Consequently, nothing in this court's disposition should be construed as a final adjudication on the merits of the case. Rather, resolution of the issues regarding the existence of an unambiguous and enforceable restrictive covenant are for the chancellor to determine in light of the evidence presented by the parties and the applicable law.

at 40–41. In support of its decision to consider the addendum, the majority cites *Valvano v. Galardi, supra* 363 Pa.Super. at 584, 526 A.2d 1216, and *Shawnee Lake Association v. Uhler*, 131 Pa.Super. 146, 198 A. 910 (1938) for the proposition that the merger rule does not preclude enforcement of matters which the parties intended not to be consummated by the deed or which are collateral thereto. *See* Majority opinion, ante at 40 n. 5. Although the proposition of law is correctly stated, these decisions are distinguishable from the instant case. Here, the provisions of the addendum, insofar as they relate to the restrictive covenant, cannot be construed as being collateral to the deed because the deed has incorporated the terms of the restrictive covenant by reference. *Compare Valvano v. Galardi*, 363 Pa.Super. at 592 n. 2, 526 A.2d at 1220 n. 2 (easement set forth in addendum to agreement of sale did not merge with the deed because the parties expressed an intent to the contrary and the terms of the easement disclosed that it was clearly collateral to the deed); *Shawnee Lake Association v. Uhler*, 131 Pa.Super. at 152–153, 198 A. at 913 (parties did not intend restrictive covenant contained in a separate agreement to merge with and be superseded by the deed, where none of the lot owners' deeds contained the restrictive covenant). Because those provisions of the addendum concerning the restrictive covenant merged with and are not collateral to the deed, consideration of paragraphs d and f of the addendum is unnecessary, and any alleged ambiguities created thereby are irrelevant. I therefore am unable to join in the majority's discussion of this matter.