**Bonser v. Chamberlain**

C.P. of Monroe County, No. 9994 CIVIL 2012

*David A. Marino*, for plaintiff.
*Michael B. Kaspszyk*, for defendants.

WILLIAMSON, *J.*, Sept. 18, 2014—This matter comes before the court on plaintiff's request for an injunction to enforce restrictive covenants. The defendants also filed a counter-claim alleging plaintiff is violating the same restrictive covenants. The matter came before the court for a hearing and we make the following findings:

### FINDINGS OF FACT

1. Carol Chamberlain and William Wesley Gouger are the owners of real property located at 1400 Grandview Drive, Saylorsburg, Pennsylvania.

2. The real property consists of 5.631 acres as described in Deed Book 2165 p. 7018 at the Monroe County Recorder of Deeds Office. (Plaintiff's exh. 2).

3. The real property is also known as Lot No. 9 on a plan titled "Final Plan, Blue Ridge Estates" recorded in Plot Book 58, page 33 at the Monroe County Recorder of Deeds Office. (*Id.*)

4. Plaintiff Robert R. Bonser, Jr. is the owner of Lot No. 12 of Blue Ridge Estates. (Plaintiffs exh. 1).

5. Properties in Blue Ridge Estates are subject to restrictive covenants. (Plaintiff's exh. 3).

6. Plaintiff Robert R. Bonser, Jr. was one of the

developers of Blue Mountain Estates and original owner, along with his business partners, of both lots 9 and 12.

7. The restrictive covenants state in part as follows:

"1. No building presently on said lot or hereafter erected shall be erected, used or occupied as a public garage, manufacturing establishment or for any offensive or malodorous occupation. The lot shall be for residential purposes only.

2. No building shall be erected except a single family dwelling house with a minimum habitable area of 720 square feet and a private garage or a two family dwelling house with a minimum habitable area of 1200 sq. ft. and a private garage.

3. No other outbuildings, temporary dwellings or buildings shall be erected or placed on the premises, except a utility shed.

...

5. No animals, livestock or poultry of any kind shall be raised, bred or kept on any lot other than commonly accepted domestic pets, provided they are not raised, bred or kept for any commercial purposes.

6. No unlicensed vehicle nor one that is inoperative for a period in excess of 30 days shall be kept on the premises, unless it is placed completely under the roof of a garage and out of view..."

(Plaintiffs exh. 3).

8. The defendants had the following animals at their real property at time of the hearing:

(3) turkeys; (10) goats; 20 +/- chickens; (1) horse; (3) heifers and bull calves; (3) beagles; and indoor cats.

9. The defendants only keep the heifers/bull calves on the property for a short period of time for the West End Fair; otherwise, they are kept on 120 acres in New Jersey.

10. The defendants have a John Deere Excavator and a Model 710 Backhoe, both housed elsewhere, but sometimes stored at the property if needed for personal use.

11. The defendants have a Model 9000 Dump Truck (double axle) used for their business, Gouger Construction/ Excavating/Septic Systems.

12. William Gouger is a "hobby farmer" maintaining a half dozen or so fields for farming purposes. The farming activity does not take place on the property subject to this action.

13. The defendants have the following farming equipment at the real property:

1600 Oliver tractor; 1850 Oliver tractor; hay baler; 1190 International hay bine; Ford baler; Hay tetter; manure spreader; and chisel plow.

14. Most of the defendants' farming and all of the livestock are for personal use or consumption.

15. The horse is the defendants' daughter's pet.

16. Other properties in Blue Ridge Estates contain horses thereon and the plaintiff has no objection to the horse.

17. The defendants' property has a house thereon with chicken coops, a 12'x16' shed, a lean-to shed, and a 28'x30' pole barn.

18. The defendant conducts no business at his property, but does park his double axle dump truck and other equipment there at times.

19. The parties have previously been before the Chestnuthill Township Zoning Hearing Board for similar issues.

20. Plaintiff contributed to the drafting of the restrictive covenants.

21. Plaintiff complains of animals wandering off of the defendants' property, excessive noise of the equipment, truck and animals, and the smell of the animals and diesel fumes.

22. William Gouger does fix and maintain his equipment at the property, and he uses the manure from the animals to spread as fertilizer on the fields that he farms.

23. The plaintiff's own property has a house with an attached garage, an outdoor furnace and a 12'x20' storage shed.

## DISCUSSION

An owner of a lot in a subdivision has the right to enforce restrictive covenants as they run with the land and may be enforced in equity by owners of other lots in the development. *Doylestown Township v. Teeling*, 635 A.2d 657 (Pa. Cmwlth. 1993). The enforcement is within the court's equitable powers. *Perrige v. Horming*, 440 Pa. Super. 31, 654 A.2d 1183 (1995). Land use restrictions must be strictly construed and will not be expanded by implication. *Buck Hill Falls Co. v. Clifford Press*, 791 A.2d 392 (Pa. Super. 2002). The court must rely upon the ordinary meaning of the language used in the covenants to ascertain the parties' intent. *Berger v. Ackerman*, 439 A.2d 200 (Pa. Super. 1981).

We first find that the use of the property is not violative of restrictive covenant #1. No evidence existed that any building is being occupied or used as a public garage, manufacturing establishment, or any offensive or malodorous occupation. The lot is being used for residential purposes. In strictly construing the language of the restrictive covenants, there is no occupation being conducted at the defendants' property. While they store some trucks and at times some excavation equipment, there was no evidence customers come to the property. There was no evidence the property was used as a public garage. The defendant works on the equipment himself when necessary. All of the equipment worked on belongs to the defendants. This is not prohibited by the language of the covenants. Use of the property for an occupation infers that business is being conducted at the property, and customers come there or the business activity takes place there.

The mere parking of vehicles at the property used in a commercial business and repair or maintenance of said vehicles by Mr. Gouger, is not the same as an occupation or commercial use of the property. The defendants live at the property, and choose to park their vehicles and equipment there. No one else comes to the property and no actual business is conducted there. Furthermore, there was no evidence that a building was used for any use prohibited by the covenants. A strict reading of the covenants does not prohibit Mr. Gouger's activity. While the loud noise of the vehicles, repairs and maintenance, and the diesel smell may be unpleasant, it is not an ongoing establishment or occupation in a building at the property pursuant to the strict language of the covenants.

Likewise, the farm equipment is not prohibited from being on the real property. No building was used as a public

garage, manufacturing establishment, or for any offensive or malodorous occupation by storage of farming equipment. No farming is conducted on the lot. There was no evidence of storage of vegetables, produce, or other crops farmed by the defendants at the property. There was no evidence such crops are sold at the property. There also was no evidence that any of the vehicles or equipment on the property were unlicensed or inoperable for a period in excess of thirty (30) days. We further note that farm equipment is exempt from licensing requirements in Pennsylvania. The storage of these vehicles and equipment are not prohibited by a strict interpretation of the covenants.

The plaintiff also seeks injunctive relief regarding the animals at the defendants' property. The cats and beagles are clearly domestic pets and exempt from the prohibition of the restrictive covenants. (Covenant no. 5). The testimony also showed that the horse is kept as a domestic pet. Also, testimony indicated there are other horses kept on properties in Blue Ridge Estates, and the plaintiff was "probably" not objecting to the horse. The plaintiff's concerns were the other animals at the property. Therefore, the horse is not prohibited by the covenants.

The testimony indicated the other animals are kept for personal consumption or use. The chickens are all egg-laying hens. Restrictive covenant #5 prohibits animals, livestock or poultry of any kind other than commonly accepted domestic pets. Poultry is specifically addressed in the covenant and chickens and turkeys are poultry. The testimony indicated they are raised for personal consumption. (i.e. eggs, etc.). There was no testimony that they are considered pets. We cannot say that chickens or turkeys are commonly accepted domestic pets, and the use is for consumption, thereby negating use as a pet.

By the plain meaning of the covenants, the chickens and turkeys are prohibited from being raised, bred or kept at the property as poultry.

The heifers and bull calves are livestock. By the plain meaning of restrictive covenant #5, livestock are not to be raised, bred or kept on the property. They are not commonly accepted domestic pets. The fact the livestock are only on the property for a short period of time for the West End Fair does not matter. The covenant's plain meaning prevents any livestock from being kept on the premises with no requirement of a certain duration.

There was no testimony whether the goats are used for milk, food or simply kept as pets. There is no specific prohibition of goats. There was no testimony of the purpose of the goats. Therefore, it is possible they are kept as pets. The only applicable language is that no animals of any kind may be raised, bred or kept on the property other than commonly accepted domestic pets. The term "animals", in conjunction with "other than commonly accepted domestic pets" is overly broad. The term animals could apply broadly, while one's view of a commonly accepted domestic pet could be narrow or broad. Since there was no testimony on the particular use for the goats, it is possible they are kept as pets under a broad interpretation of the covenants. As the burden is on the plaintiff to show a violation, and the covenants are strictly construed as to this burden, we find the plaintiff is unable to do so in this regard. The restrictive covenant #5 is overly broad as to animals and domestic pets with different interpretations. Therefore, it does not apply.

Plaintiff's final request is that the defendants remove those structures in excess of their home, private garage and a utility shed. At issue are restrictive covenants #2 and

#3. Covenant #2 states no building except a single family dwelling house and a private garage is allowed on the property. Covenant #3 states: "(N)o other outbuildings, temporary dwellings or buildings shall be erected or placed on the premises, except a utility shed."

The language of covenant #3 ˙ is sufficiently broad regarding a private garage, such that the defendants' pole barn qualifies. The covenant does not specify whether or not the private garage has to be attached to the house. The language does not indicate how the garage is to be used. A garage is a building in which to keep a motor vehicle according to the *Oxford American Dictionary*. Mr. Gouger testified he uses the pole barn to store his equipment. It is large enough that it could house one or more motor vehicles. The covenant is overly broad such that the pole barn can be classified as a garage. The defendant uses it to store his equipment, a use being the same as a garage. A single family dwelling house may customarily have a private garage attached, or detached. The covenants do not specify. Furthermore, there was no testimony whether or not the defendants' residence had an attached garage or not. We find this to be irrelevant anyway, as the covenants are sufficiently broad that an attached garage is part of the single-family residence. The additional language, "and a garage", can be interpreted to include either an attached or detached garage, or both. Therefore, the pole barn on the defendants' property is an allowed garage within the meaning of the covenants.

The remaining issue is the other outbuildings on the property. The testimony was that the defendants also have a 12'x16' shed, a lean-to shed, and chicken coops. We find that these structures are "other outbuildings" contemplated by restrictive covenant #3. As such, only a utility shed can exist in addition to the pole barn, which is a private garage,

and the defendants' single family dwelling house. It is not for this court to decide which structure may remain; but, of the chicken coops, the 12'x16' shed and the lean-to shed, only one is allowed under the restrictive covenants. The others must be removed, as the covenant is sufficiently specific in that regard.

The defendants' counter-claim alleges the plaintiff is also violating the restrictive covenants. We agree. Looking at restrictive covenant #2 and #3 collectively, plaintiff is allowed a single-family dwelling house and a private garage and a utility shed. The plaintiff has a single — family dwelling with a garage, a 12'x20' storage shed, and an outdoor wood-burning furnace. We find the outdoor furnace is an outbuilding contemplated by the restrictive covenants. The shed does not appear to be a garage, nor was there testimony supporting the fact a motor vehicle could be stored in it. The covenants must be strictly construed against the party seeking to enforce them. They must also be strictly construed against the party who drafted them.

Here, plaintiff helped draft the restrictive covenants. An outbuilding is a building, such as a shed or barn, etc. belonging to, but separate from a house. *Oxford American Dictionary*. The outdoor furnace is enclosed in what appears to be a small shed structure. (Pl. exh. 8 and 9). It serves to heat plaintiff's house, but it exists as a separate stand-alone structure. Therefore, it is an outbuilding as contemplated by the restrictive covenants. Together with the 12'x20' shed, there is more than a utility shed on the property. Although there is no definition in the covenants for a utility shed, we find the plain and unambiguous meaning is any outdoor structure used for any purpose or reason, resembling a shed, and without a specific size stated. It is a structure that could not accommodate a motor vehicle, making it a garage for

purposes of the covenants. As such, the plaintiff will need to remove one of these two structures, as well.

## ORDER

And now, this 18th day of September, 2014, it is ordered and decreed as follows:

1. Defendants are permanently enjoined from breeding, raising or keeping the turkeys, chickens, heifers and bull calves at their property located at 1400 Grandview Drive, Lot 9, Blue Ridge Estates, Saylorsburg, Pennsylvania;

2. The defendants are permanently enjoined from maintaining outbuildings on their property other than their residence, pole barn, and one shed.

3. The plaintiff is permanently enjoined from maintaining outbuildings on his property other than his residence, a garage and one shed. The storage shed and outdoor wood burning furnace are both outbuildings under the covenants for purposes of this order.

4. All other requests for an injunction by the parties are denied.